IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRICIA ANN HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-150-E |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

O R D E R

AND NOW, this 29th day of September, 2016, upon consideration of the parties'

cross-motions for summary judgment, the Court, upon review of the Commissioner of Social

Security's final decision denying Plaintiff's claim for Supplemental Security Income ("SSI")

benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that

the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.

See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services,

48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert.

denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial

evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh

the evidence, nor reverse, merely because it would have decided the claim differently) (citing

Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]      Plaintiff raises numerous arguments in support of her claim that the Administrative Law Judge ("ALJ") erred in finding her to be not disabled.  However, for the reasons set forth below, the Court finds no merit in these arguments and finds that substantial evidence supports the ALJ's decision.

Plaintiff's first argument is that the ALJ failed to discuss how her obesity had been factored into her residual functional capacity ("RFC").  The record shows that the ALJ did find Plaintiff's obesity to be a severe impairment at Step Two of the sequential process, and that he indicated that he had considered her obesity in determining whether she had medically determinable impairments that are severe, whether those impairments met or equaled any listing, and in determining her RFC.  (R. 49).  However, as Plaintiff points out, there is no more specific discussion as to how the ALJ went about considering her obesity.  It is difficult, if not impossible, then, for the Court to review his consideration of this issue.

The question therefore becomes whether this case is more like the situation in Rutherford v. Barnhart, 399 F.3d 546 (3d Cir. 2005), where the failure to expressly discuss obesity did not warrant remand because such a discussion would not have affected the outcome of the case, or like in Diaz v. Commissioner of Social Security, 577 F.3d 500 (3d Cir. 2009), where failure to consider the impact of obesity did require remand.  The Court finds that Rutherford is the far more analogous case. Here, as in that case, Plaintiff did not assert obesity as an impairment, either in the disability report to the Social Security Administration (R. 242) or at her hearing before the ALJ (R. 62-95).  See 399 F.3d at 552.  Plaintiff appears to claim that she raised the issue at the hearing by making passing reference to not wanting to gain weight (R. 83), but she in no way attempted to establish any functional limitations based upon, or exacerbated by, her weight.  Indeed, the most significant testimony regarding her weight at the hearing was that she had lost 100 pounds recently.  (R. 66-67).  The record simply does not support any credible argument that Plaintiff raised the issue of her obesity as an impairment or as causing or aggravating any functional limitation.  Indeed, the Third Circuit, in Diaz, found this distinction to be significant.  See 577 F.3d at 504.  Moreover, as in Rutherford, and *unlike* the situation in Diaz, Plaintiff has not established how her obesity would impact her RFC.  Her only explanation is that one of her treating physicians suggested that she lose weight, and that another recommended 30 minutes of exercise a day as part of her treatment for headaches. However, the recommendation as to weight loss was not specifically tied into her problem with headaches or any other condition.  (R. 350).  Further, there is no evidence that her treating physicians found that her weight would prevent her from exercising 30 minutes a day, nor, for that matter, that she herself believes that to be the case.  Indeed, Plaintiff offers no suggestion whatsoever as to what functional limitations should have been included in her RFC to account for her obesity that are not already there.  As such, she offers no more than the type of generalized speculation that her weight could have had an impact rejected by the Third Circuit in Rutherford.  See 399 F.3d at 553.  Therefore, the Court finds that remand is not warranted on this issue.

Plaintiff's next arguments relate to her overall contention that the ALJ had no basis to find that she abused prescription medication. However, she somewhat confuses the issue by arguing: (1) that the ALJ's inclusion of prescription medication abuse as a severe impairment in his Step Two analysis somehow requires a remand; and (2) that Social Security Ruling ("SSR") 82-59, 1982 WL 31384 (S.S.A.) (1982), which pertains to findings by an ALJ that a claimant has failed to follow prescribed treatment, applies here. As to her Step Two argument, even assuming that there was an insufficient basis for the ALJ to have found that Plaintiff had the severe impairment of prescription medication abuse, it is unclear why this would warrant a remand. This case was not decided at Step Two, and there is no basis for finding that the erroneous addition of an extra severe impairment would have any impact on the resolution of this case. As to Plaintiff's argument pursuant to SSR 82-59, she ignores the fact that this ruling applies to situations in which a claimant would otherwise have been found to be disabled but failed, without justifiable cause, to follow prescribed treatment that can be expected to restore the claimant's ability to work. That is not at all what the ALJ found here. Plaintiff's claim (which, as the Court will discuss below, is incorrect in any event) is that SSR 82-69 precludes an ALJ from "faulting" a claimant for following the advice of one doctor over that of another. However, this ruling only demonstrates that following the advice of one doctor over that of another establishes justifiable cause for failing to follow treatment directives so as to not have a claim dismissed on that ground. It does not pertain to the use of treatment history to evaluate a claimant's credibility.

Indeed, it is the issue of credibility that is the real concern here. Plaintiff alleges that the ALJ relied on what he found to be her abuse of prescription medications in evaluating her credibility in regard to her subjective complaints without sufficient record support. The problem with Plaintiff's argument is that she portrays the ALJ's finding, as noted above, as merely a determination that she should listen to the treating sources who recommend that she not take narcotic medication to treat her migraine headaches rather than those who recommend such medications. That is not the case. The ALJ's concern was not that Plaintiff was not complying with treatment, but that her behavior, and statements from her treating physicians, supported a conclusion that she was overusing prescription medication. Indeed, the ALJ cites specifically to Dr. Josif Stakic, M.D., of the UPMC Headache Center, who in September of 2013 stated that Plaintiff has extensive medication overuse over the course of many years. (R. 1006). Indeed, the record confirms Dr. Stakic's finding of medication overuse (R. 744, 879, 968), and also documents her doctors' concerns that she take her medication only as prescribed (R. 881). Records also demonstrate her own frustration that doctors had accused her of seeking narcotics. (R. 1098). Further, notes from Stairways Behavioral Health reference Plaintiff's preoccupation with her medications. (R. 916). Moreover, as the ALJ points out, Plaintiff sought prescriptions for narcotic medications from several doctors, and refused any other treatment when they declined to give her such a prescription. (R. 911, 955, 1006). The ALJ also relied on the fact that Plaintiff told Dr. Stakic that she had "good quality of life with morphine and oxycodone." (R. 1006).

This record provides substantial evidence to support the ALJ's finding that Plaintiff's overuse of narcotics impacted her credibility. It is important to note that, contrary to Plaintiff's contention, the ALJ did not find that Plaintiff was not disabled because she had refused

prescribed treatment.  Likewise, he did not find that Plaintiff's substance abuse prevented her from receiving benefits.  Rather, he considered what he found to be, and what the record supports as, potential drug-seeking behavior in determining the credibility of Plaintiff's subjective complaints regarding the impact of her migraine headaches.  It was, in fact, only one of several factors the ALJ considered in evaluating Plaintiff's credibility.

Plaintiff's other assertions regarding the ALJ's consideration of her credibility fare no better.   She argues, for instance, that it was improper for the ALJ to consider the fact that she was raising a young autistic child and, for a time, her granddaughter, in evaluating her credibility.   However, an ALJ is required to consider a claimant's activities of daily living in evaluating the claimant's subjective complaints, see 20 C.F.R. § 416.929(c)(3)(i), and this includes providing care for children.  See Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).  Moreover, Plaintiff has given conflicting reports as to the role that her father has played in the care of her son.  She testified that her father was visiting to help care for her son (R. 67), but previously told Bassett Healthcare that she cares not only for her son, but for her father (R. 710).

Plaintiff also suggests that it was somehow improper for the ALJ to consider the objective medical evidence in evaluating her credibility.  However, it is axiomatic that an ALJ must consider the objective medical evidence in evaluating a claimant's subjective claims.  See 20 C.F.R. § 416.929(c)(2).  The ALJ was simply not at liberty to disregard such evidence. Moreover, at no point did the ALJ insist that any limitations must be established solely by way of objective medical evidence.  Plaintiff seems to suggest that the situation is different when migraine headaches are the issue, arguing that migraine headaches cannot necessarily be detected by objective diagnostic methods.  However, this is true of any pain-related condition. Nonetheless, the ALJ did not merely reference the lack of objective evidence supporting Plaintiff's claims regarding her migraine symptoms, he actually pointed to objective evidence that contradicted her claims. He noted, for instance, that despite Plaintiff's claims of being photosensitive, she did not demonstrate photophobia upon fundoscopic examination.  (R. 910). Furthermore, the ALJ did not dismiss Plaintiff's complaints entirely and, in fact, included several limitations in the RFC relating to her migraine headaches, including that she be limited to sedentary work and that she have limited exposure to light and noise.  (R. 52).  These factors make this case very different than the cases cited by Plaintiff, Salberg v. Astrue, 2012 WL 4478310 (W.D. Pa. Sept. 27, 2012) and Thomas v. Colvin, 2015 WL 4067147 (W.D. Pa. July 2, 2015), where the ALJs failed to include *any* limitations in the claimant's RFC to account for the claimant's migraine headaches.

The Court again emphasizes that the ALJ did not rely on any one factor in determining not to fully credit Plaintiff's subjective claims regarding her headaches, but rather considered a number of factors in reaching his conclusion.  These factors included not only the drug overuse, daily activities, and objective medical evidence discussed above, but also the fact that Plaintiff had filed eight prior applications for benefits since 1998 while maintaining the same daily activities, the fact that she worked part-time just days after her alleged onset date, and the fact that she was not compliant in providing records to the Social Security Administration as it considered her claim.  (R. 53).  As a general matter, when an ALJ has articulated reasons

supporting a credibility determination, that determination is afforded significant deference.  See Horodenski v. Comm'r of Soc. Sec., 215 Fed. Appx. 183, 189-90 (3d Cir. 2007);  Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).  Here, the Court finds that there was sufficient evidence to support the ALJ's findings regarding the veracity of Plaintiff's subjective complaints.

Plaintiff's final argument is that, pursuant to Doak v. Heckler, 790 F.2d 26 (3d Cir. 1986), the ALJ was required to rely upon a specific medical opinion in formulating Plaintiff's RFC.  However, as the Court previously explained in Doty v. Colvin, 2014 WL 29036 (W.D. Pa. Jan. 2, 2014), this Court does not agree with Plaintiff's interpretation of Doak.  Rather, the Court has repeatedly held that the decision in Doak does not provide that an ALJ's RFC findings must be based on a particular medical opinion or that an ALJ may only reject a medical opinion as to functional limitations based on another opinion.  Instead, the Third Circuit Court of Appeals, in Doak, held simply that nothing in the record in that case, which consisted of nothing more than testimony and three medical reports, supported the ALJ's finding that the claimant could perform light work.  While the Circuit pointed out that none of the three reports contained a suggestion from a physician that the claimant could perform light work, in no way did it suggest that a finding of light work could only be supported if one of the three had expressly opined that the claimant could perform such work, nor did it find that their contrary opinions precluded such a finding *per se*.

Indeed, as this Court explained in Doty, interpreting Doak in the manner suggested by Plaintiff would ignore the fact that "[t]he ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations."  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).  See also 20 C.F.R. §§ 416.927(d)(2), 416.946(c); SSR 96-5p, 1996 WL 374183 (S.S.A.) (1996).  Such an interpretation would also ignore the fact that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."  Titterington v. Barnhart, 174 Fed. Appx. 6, 11 (3d Cir. 2006).  See also Chandler, 667 F.3d at 362 (holding that each fact incorporated into the RFC need not have been found by a medical expert).  As the Circuit Court explained in Titterington, "[s]urveying the medical evidence to craft an RFC is part of an ALJ's duties."  174 Fed. Appx. at 11.  Consistent with this later case law, Doak does not prohibit the ALJ from making an RFC assessment even if no doctor has specifically made the same findings.  See Hayes v. Astrue, 2007 WL 4456119, at *2 (E.D. Pa. Dec. 17, 2007).  The Third Circuit, in Doak, did nothing more than make a substantial evidence finding in light of the record of the case and did not purport to create a rule that an RFC determination must be based on a specific medical opinion, and subsequent Third Circuit case law confirms this understanding.  See also Mays v. Barnhart, 78 Fed. Appx. 808, 813 (3d Cir. 2003); Cummings v. Colvin, 2015 WL 4092321, at **5-6 (W.D. Pa. July 7, 2015); Carter v. Colvin, 2015 WL 1866208, at *10 n.3 (W.D. Pa. Apr. 23, 2015); Goodson v. Colvin, 2014 WL 5308021, at *3 (Oct. 16, 2014).

Of course, in any event, substantial evidence must support an ALJ's findings as to the claimant's RFC.  Here, however, substantial evidence does support the ALJ's findings.  The ALJ specifically incorporated restrictions pertaining to Plaintiff's physical impairments, particularly her headaches, and her mental impairments.  Plaintiff does not suggest what additional

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 11) is DENIED and Defendant's Motion for Summary Judgment (document No. 14) is GRANTED.


                                                 <u>s/Alan N. Bloch</u>
                                                 United States District Judge

ecf:        Counsel of record

---

impairments should have been included. The Court further notes that, despite being represented by counsel, Plaintiff did not seek any medical opinions from her treating physicians or request that the ALJ arrange a consultative examination. Indeed, given that she has been applying for social security disability benefits consistently for many years, she is very familiar with the process.

Accordingly, for all of the reasons stated herein, the Court affirms the ALJ's decision.